**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
DUBLIN DIVISION**

| | |
|---|---|
| PHILLIP MESSICK, | |
| Plaintiff, | |
| v. | |
| ROGER BRYANT, in his individual capacity as Alamo Chief of Police; JOHNNY L. SMITH, in his individual capacity as Deputy for Wheeler County; CLARK SCHRADER, in his individual capacity as Officer for Dublin Police Department; MIKE SMITH, in his individual capacity as Sheriff of Wheeler County; and TIM CHATMAN, in his individual capacity as Dublin Chief of Police, | Civil Action No.:  3:22-cv-21 |
| Defendants. | **JURY TRIAL DEMANDED** |

## COMPLAINT

COMES NOW Plaintiff Phillip Messick, by and through undersigned counsel, and brings this action pursuant to the Fourth and Fourteenth Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. § 1983, (hereinafter, "Section "1983").  Plaintiff alleges that, as a pre-trial detainee, Defendants Roger Bryant, Alamo Chief of Police, Johnny L. Smith, Deputy for Wheeler County, Clark Schrader, Officer for Dublin Police Department, Mike Smith, Sheriff of Wheeler County, and Tim Chatman, Dublin Chief of Police, each in their Individual Capacities, violated Plaintiff's constitutional and civil rights by failing to provide medical care, by arresting Plaintiff without probable cause, by subjecting Plaintiff to excessive force, and/or by failing to train, respectfully showing the Court as follows:

## JURISDICTION AND VENUE

### 1.

This action arises under the United States Constitution and the Civil Rights Act pursuant to 42 U.S.C. §§ 1983 and 1988 and the Fourth and Fourteenth Amendments of the United States Constitution, wherein Plaintiff Phillip Messick seeks to redress deprivations suffered by Plaintiff at the hands of Defendants. Jurisdiction of this Court is invoked under 28 U.S.C. §§ 1331 and 1343.

### 2.

At all times relevant herein, all Defendants were acting under the color of state law and violating rights secured by the Fourth and Fourteenth Amendments to the United States Constitution and the laws of the United States of America.

### 3.

Venue is proper in this judicial district based upon 28 U.S.C. § 1391 because the events underlying this action occurred in Alamo, Wheeler County, Georgia and Dublin, Laurens County, Georgia, which are both located within this judicial district.

## PARTIES

### 4.

Plaintiff Phillip Messick (hereinafter, "Plaintiff" or "Messick") is a citizen of the United States and a resident of Georgia. At all times relevant to this suit, Mr. Messick was a pre-trial detainee with the Alamo Police Department, Wheeler County Sheriff's Office, and Dublin Police Department.

5.

At all times relevant to this suit, Defendant Roger Bryant was Chief of Police at Alamo Police Department.   Defendant Bryant may be served with process at the Alamo Police Department, located at 5 W Main St, Alamo, GA 30411.

6.

At all times relevant to this suit, Defendant Johnny L. Smith was a sheriff's deputy with Wheeler County Sheriff's Office.  Defendant Bryant may be served with process at the Wheeler County Sheriff's Office, located at 21 Forest Ave, Alamo, GA 30411.

7.

At all times relevant to this suit, Defendant Clark Schrader was a police officer with Dublin Police Department. Defendant Schrader may be served with process at the Dublin Police Department, located at 346 S Jefferson St, Dublin, GA 31021.

8.

At all times relevant to this suit, Defendant Mike Smith was the Sheriff of Wheeler County. As Sheriff, Defendant Smith was responsible for training and supervising of his sheriff deputies. Defendant Smith may be served with process at the Wheeler County Sheriff's Office, located at 21 Forest Ave, Alamo, GA 30411.

9.

At all times relevant to this suit, Defendant Tim Chatman was the Dublin Chief of Police. As Chief of Police, Defendant Chatman was responsible for training and supervising of his police officers. Defendant Chatman may be served with process at the Dublin Police Department, located at 346 S Jefferson St, Dublin, GA 31021.

## STATEMENT OF FACTS

### 10.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 9, as if the same were set forth herein.

### 11.

Mr. Messick is a veteran of the United States Army who served in Iraq from November 2005 until August 2012.

### 12.

During Mr. Messick service, he began experiencing symptoms of Post-Traumatic Stress Disorder (hereinafter, "PTSD"). Since then, Mr. Messick has been clinically diagnosed with PTSD, anxiety, dissociative disorder, and depression.

### 13.

Additionally, Mr. Messick is considered by Veteran Affairs (hereinafter, "VA") to be 100% disabled.

### 14.

Due to the difficulties that Mr. Messick has faced in dealing with PTSD and other related mental health issues, Mr. Messick volunteers with the Veterans Court as a community liaison in Wheeler, Dodge, Telfair, Pulaski, and Montgomery County.

### 15.

During the early morning of Sunday, March 8, 2020, Mr. Messick woke up approximately around 3:15 a.m. due to experiencing intense chest pains.

16.

Mr. Messick has a history of high blood pressure and began to fear that he was having heart attack.

17.

Accordingly, around 3:24 a.m. Mr. Messick's fiancé called 911 for assistance.

18.

While on the phone with the dispatcher, Mr. Messick was informed that it would be 10 to 12 minutes before EMS could arrive.

19.

Due to the amount of time it was going to take for EMS to arrive, Mr. Messick informed the dispatcher that he would drive himself to the hospital.

20.

Mr. Messick had driven approximately 100 feet from his house when he saw Alamo Chief of Police Roger Bryant (hereinafter, "Chief Bryant") coming down the road.

21.

Chief Bryant had been dispatched to Mr. Messick's house due to Chief Bryant knowing Mr. Messick. Chief Bryant informed EMS that he would go check on Mr. Messick and attempt to calm him down.

22.

Chief Bryant was aware that Mr. Messick was former military and suffered from PTSD.

23.

Upon seeing Chief Bryant, Mr. Messick slowly approached Chief Bryant's patrol car and rolled down his window to inform Chief Bryant that he was having a heart attack.

24.

After telling Chief Bryant that he was having a heart attack, Mr. Messick continued driving to the hospital with his hazard lights on.

25.

Chief Bryant responded by turning to follow Mr. Messick and by turning on his blue lights and siren.

26.

Mr. Messick believed that Chief Bryant's blue lights were a sign that Chief Bryant was going to escort Mr. Messick to the hospital.

27.

Accordingly, Mr. Messick pulled over his car, turned off his car, and hobbled over to the back of the police car all while clutching at his heart and tried to get into the passenger side of the police cruiser.

28.

When Mr. Messick reach for the police car's door, Chief Bryant told Mr. Messick to hold up, for which Mr. Messick responded by stating, "Please let's go. I am dying."

29.

At this point, Chief Bryant exited his car and walking to the front of the vehicle where Mr. Messick was standing.

30.

Mr. Messick continued to ask to be taken to the hospital.

31.

Around 3:39 a.m. an ambulance arrived on scene and pulled in front of the police car. Additional sheriff deputies also arrived on the scene.

32.

Despite EMS being on the scene, no medical personnel exited the vehicle, and Mr. Messick was not escorted into the ambulance.

33.

Around 3:41 a.m., Mr. Messick attempted to leave the scene so that he could go to the hospital.

34.

When Mr. Messick tried to leave the scene to seek medical treatment, Deputy Johnny L. Smith (hereafter, "Deputy Smith") with the Wheeler County Sheriff's Department tripped and shoved Mr. Messick onto the ground and shot him multiple time with a taser gun.

35.

While laying on the ground after being tased, Mr. Messick pleaded with the officers by stating, "I'm dying, and you are killing me."

36.

When Mr. Messick attempted to get up, Deputy Smith forcefully placed Mr. Messick into handcuffs and placed him in the back of Chief Bryant's patrol car.

37.

While Mr. Messick was sitting in Chief Bryant's patrol car, Mr. Messick repeatedly stated, "I'm having a heart attack" and asked for an ambulance to take him to the hospital.

38.

From around 3:46 a.m. until 4:20 a.m., Mr. Messick continued to be detained in the back of the patrol car while pleading with the deputies to take him to the hospital.

39.

Around 4:18 a.m., the ambulance on the scene left without providing Mr. Messick with any medical assistance.

40.

Around 4:20 a.m. – almost an hour after Mr. Messick had initially called 911, Chief Bryant and Chief Deputy Richie Floyd (hereinafter, "Chief Deputy Floyd) transported a handcuffed Mr. Messick to Fairview Park Hospital in Dublin, Georgia.

41.

The deputies transported Mr. Messick to Fairview Park Hospital (hereinafter, "Fairview") against his wishes. Mr. Messick repeatedly requested to be taken to the VA hospital or a VA-approved emergency care facility as identified in his crisis plan with the VA.

42.

When Mr. Messick arrived at Fairview, he reasserted his request to be taken to an emergency care facility that was covered by the VA.

43.

Upon being escorted into Fairview in handcuffs, Mr. Messick informed the staff that he was suffering from severe chest pains.

44.

Mr. Messick was then placed on the ground in a room with no furniture while still in handcuffs.

45.

After the nurses requested that Mr. Messick handcuffs be removed, Chief Bryant removed the handcuffs and informed Mr. Messick that he was no longer being detained.

46.

After Mr. Messick was released from the handcuffs, he asked to be released from the hospital so that he could go to a VA emergency facility.

47.

Before leaving the hospital, Mr. Messick contacted the Carl Vinson VA Medical Center in Dublin, Georgia to schedule an appointment with them to check on his injuries sustained from being tased and thrown to the ground by Deputy Smith.

48.

While Mr. Messick was exiting the front door of the hospital and walking down the handicap ramp with his fiancé and three-year-old daughter, Officer Clark Schrader (hereinafter, "Officer Schrader") from the Dublin Police Department tacked Mr. Messick against the handicap ramp rail and forcibly placed him on the ground where he then handcuffed Mr. Messick.

49.

As a result of being forcibly thrown to the ground and handcuffed by Officer Schrader, Mr. Messick suffered a torn rotator cuff.

50.

Mr. Messick was then placed in a patrol car by the Dublin Police Department and transported to the Laurens County Detention Center.

51.

At this time, Mr. Mesick still has not received any medical treatment nor had he been allowed to go to a VA emergency care facility.

52.

On March 9, 2020, VA case manager, Judith Foster learned that Mr. Messick was incarcerated in the Laurens County Detention Center, Ms. Foster reached out to Mr. Messick who told Ms. Foster that he had been experiencing chest pains since the day before and had yet to receive any treatment.

53.

Ms. Foster then notified the jail staff that Mr. Messick was experiencing chest pains and requested that they provide him with medical attention immediately.

54.

Mr. Messick was eventually released from the Laurens County Detention Center.

55.

After the above-mentioned incidents, Mr. Messick was charged with two counts of obstruction of an officer and fleeing/attempting to elude an officer in Wheeler County and was charged with aggravated battery, two counts of battery, obstruction of an officer, and disorderly conduct in Laurens County. Mr. Messick has been indicated in Wheeler County. Mr. Messick has not yet been indicted in Laurens County.

56.

Due to the actions of the Wheeler County Sheriff's Department, the Alamo Police Department, and Dublin Police Department, Mr. Messick suffered physical injuries to his shoulder, back, and knee.

57.

Additionally, Mr. Messick suffered psychological harm that resulted in a severe back step in Mr. Messick's treatment for PTSD.

58.

After the aforementioned incidents, Mr. Messick had to both increase his medications and the frequency of his therapy visits.

## COUNT I
## FAILURE TO PROVIDE MEDICAL CARE
## IN VIOLATION SECTION 1983
## (Defendants Roger Bryant and Clark Schrader)

59.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 58, as if the same were set forth herein.

60.

Defendants Bryant and Schrader violated Plaintiff's Fourteenth Amendment rights when Defendants failed to provide Plaintiff with medical care.

61.

In order to succeed on a claim for failure to provide medical care, the Plaintiff must show (1) a serious medical need; (2) the Defendants' deliberate indifference to that need; and (3) causation between that indifference and the Plaintiff's injury. *Goebert v. Lee County*, 510 F.3d 1312, 1326 (11th Cir.2007).

62.

Plaintiff was suffering from a serious medical need on the morning of March 8, 2020.

63.

Plaintiff had contacted 911 during the early morning of March 8, 2020, to complain of chest pains and to report that he believed that he was having a heart attack.

64.

Repeatedly throughout that morning, Plaintiff reiterated to Defendants that he believed that he was having a heart attack. Thus, it was obvious to even a lay person that Plaintiff was in need of a doctor's attention.

65.

Defendants Bryant and Schrader were deliberately indifferent to Plaintiff's serious medical need.

66.

Plaintiff explicitly told Defendant Bryant that he was having a heart attack and requested to be taken a VA emergency care facility. As such, Defendant Bryant had subjective knowledge of Plaintiff's serious medical need.

67.

Despite being aware of Plaintiff's condition, Defendant Bryant arrested Plaintiff and detained Plaintiff inside Defendant's squad car.

68.

Plaintiff was detained by Defendant Bryant for almost an hour before Defendant Bryant finally transported Plaintiff to Fairview Park Hospital – a hospital that Plaintiff explicitly requested not to be taken to since it was not a VA emergency care facility.

69.

At no point did Defendant Bryant check Plaintiff's pulse or have EMS check Plaintiff's pulse despite Plaintiff complaining that he was suffering from chest pains.

70.

Defendant Bryant entirely disregarded the risk associated with delaying treatment to an individual potentially having a heart attack.

71.

Defendant Bryant's conduct goes beyond mere negligence. Defendant Bryant is not a medical professional, but he took it upon himself to determine that Plaintiff was only suffering from a panic attack and to hold Plaintiff despite Plaintiff's pleas to be taken to a VA emergency care facility.

72.

When a pre-trial detainee complains of chest pains, the pre-trial detainee should be immediately seen by a medical professional. Delaying that treatment goes beyond mere negligence.

73.

Defendant Schrader also had subjective knowledge of Plaintiff's serious medical condition. When leaving the hospital, Plaintiff made it clear that he was going to go to the VA hospital, and he informed Defendant Schrader about his chest pains.

74.

Instead of allowing Plaintiff to leave Fairview Park Hospital to go to a VA emergency care facility, Defendant Schrader pinned Plaintiff to the handicap handrail and then shoved him to the ground to place him handcuffs.

75.

By arresting Plaintiff, Defendant Schrader disregarded the Plaintiff's complaints of chest pains.

76.

Further, Defendant Schrader transported Plaintiff to the Laurens County LEC instead of allowing Plaintiff to seek medical care for his chest pains.

77.

Defendant Schrader conduct went beyond mere negligence. Defendant Schrader was aware of Plaintiff's serious medical condition and entirely denied Plaintiff access to medical treatment. Instead, Defendant Schrader booked Plaintiff into the Laurens County LEC.

78.

Plaintiff was never seen in regards to his chest pains despite the whole incidents surrounding the morning of March 8, 2020 stemming from Plaintiff calling 911 to report that he was having a heart attack.

79.

Defendants' deliberate indifference to providing Plaintiff with medical care for his chest pains and ultimate arrest of Plaintiff both exacerbated Plaintiff's PTSD episode on the day of the incident and has caused Plaintiff to have to seek additional treatment for his mental health conditions.

80.

As a result of said Defendants' failure to provide medical care, Defendant Bryant and Schrader subjected Plaintiff to cruel and unusual punishment in violation of the Fourteenth Amendment of the United States Constitution.  Accordingly, Plaintiff is entitled to all damages

available to him under Section 1983, including attorney's fees and costs of litigation, in an amount to be proven at trial.

## COUNT II
## FALSE ARREST
## IN VIOLATION OF SECTION 1983
### (Defendants Roger Bryant and Clark Schrader)

81.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 58, as if the same were set forth herein.

82.

Defendants Bryant and Schrader violated Plaintiff's Fourth Amendment rights by arresting Plaintiff without probable cause.

83.

The Fourth Amendment, which is applicable to the States through the Fourteenth Amendment, guarantees the right against unreasonable searches and seizures. *Von Stein v. Brescher*, 904 F.2d 572, 578 (11th Cir. 1990). An arrest without probable cause violates the Fourth Amendment. *Madiwale v. Savaiko*, 117 F.3d 1321, 1324 (11th Cir.1997).

84.

When Defendant Bryant handcuffed and placed Plaintiff inside Defendant's patrol car, Plaintiff was seized under the Fourth Amendment.

85.

A reasonable person in Plaintiff's position would not have believed that he was free to leave.

86.

Further, Plaintiff was unable to leave.

87.

Plaintiff contacted 911 to report chest pains. When the 911 dispatcher informed him about the wait time, Plaintiff told the dispatcher that he would drive himself to the hospital.

88.

Defendant Bryant chose to dispatch to Plaintiff's residence since he knew Plaintiff and was aware of Plaintiff's PTSD.

89.

When Plaintiff saw Defendant Bryant's squad car, he assumed that Defendant Bryant was going to escort him to the hospital.

90.

When Plaintiff saw Defendant Bryant turn on his blue lights and sirens, Plaintiff pulled over and assumed that Defendant Bryant was going to take him to the hospital in his squad car.

91.

Instead of taking Plaintiff to a VA emergency care facility, Defendant Bryant had Plaintiff handcuffed and placed inside Defendant's squad car.

92.

Defendant Bryant entirely lacked probable cause to seize Plaintiff. Plaintiff attempted to leave the scene in order to seek medical treatment. Defendant Bryant had no reason to detain and thus prevent Plaintiff from seeking medical care.

93.

Additionally, Defendant Schrader violated Plaintiff's Fourth Amendment rights when he forcibly handcuffed Plaintiff when he was leaving Fairview Park Hospital.

94.

Defendant Schrader entirely lacked probable cause to arrest Plaintiff. Plaintiff was leaving Fairview Park Hospital to go to a VA emergency care facility.

95.

Defendant Schrader had no basis to arrest Plaintiff and then to transport Plaintiff to Laurens County LEC.

96.

Neither Defendant Bryant nor Defendant Schrader are protected by qualified immunity since neither possessed arguable probable cause that Plaintiff had committed a crime when they seized Plaintiff.

97.

As a result of said Defendants' unlawful seizure and arrest of Plaintiff, Defendants Bryant and Schrader subjected Plaintiff to violations of the Fourth Amendment of the United States Constitution.  Accordingly, Plaintiff is entitled to all damages available to him under Section 1983, including attorney's fees and costs of litigation, in an amount to be proven at trial.

### COUNT III
### EXCESSIVE FORCE
### IN VIOLATION OF SECTION 1983
### (Defendants Johnny L. Smith and Clark Schrader)

98.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 58, as if the same were set forth herein.

99.

Defendants Smith and Schrader violated Plaintiff's Fourth Amendment rights by subjecting him to excessive force during the course of an arrest.

100.

"The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 747 (11th Cir. 2010).

101.

When Plaintiff was attempting to leave the scene on the side road, as discussed *supra*, Defendant Smith took Defendant Bryant's taser and tased Plaintiff. Defendant Smith then continued to tase Plaintiff to make sure that Plaintiff remained on the ground.

102.

Defendant had no reason to tase Plaintiff. Plaintiff was attempting to leave the scene in order to seek medical treatment for his chest pains. Plaintiff did not pose an immediate threat to the other officers. Further, Plaintiff was not under arrest when Defendant Smith tased him.

103.

Defendant Smith's tasing of Plaintiff is an example of gratuitous use of force against a civilian who was not resisting arrest. Plaintiff was simply trying to leave to get medical treatment.

104.

When Plaintiff was leaving Fairview Park Hospital with his finance and three-year old daughter to go to a VA emergency care facility, Defendant Schrader pinned Plaintiff against a handicap handrail and shoved Plaintiff to the ground causing Plaintiff to tear his rotator cuff.

105.

Defendant Schrader had no reason to arrest Plaintiff, and there was no reason to use excessive force. Plaintiff was at no point told that he was under arrest. He did not pose a threat to the safety of officers or others. Plaintiff was simply trying to seek medical treatment from a VA

facility. Further, Plaintiff was not attempting to evade arrest when Defendant Schrader first pinned him.

106.

Neither Defendant Smith nor Defendant Schrader are protected by qualified immunity for their use of excessive force.

107.

As a result of said Defendants' excessive force against Plaintiff, Defendants Smith and Schrader subjected Plaintiff to violations of the Fourth Amendment of the United States Constitution. Accordingly, Plaintiff is entitled to all damages available to him under Section 1983, including attorney's fees and costs of litigation, in an amount to be proven at trial.

**COUNT IV**
**FAILURE TO TRAIN**
**IN VIOLATION OF SECTION 1983**
**(Defendants Mike Smith and Tim Chatman)**

108.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 58, as if the same were set forth herein.

109.

Defendants violated Plaintiff's Eighth Amendment rights by failing to train and supervise Defendants Johnny L. Smith and Clark Schrader, which directly resulted in such Defendants mishandling Plaintiff's PTSD episode.

110.

To prevail on a claim against a supervisor for failure to supervise, the plaintiff must present some evidence that (1) the defendant knew of a need to train and/or supervise in a particular area and that defendant made a deliberate choice not to take any action, (2) that the failure to train

and/or supervise constitutes a custom or policy, and that the failure to train and/or supervise was the moving force behind the deprivation of plaintiff's constitutional right. *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998).

111.

Defendants Mike Smith and Tim Chatman were aware of the need to train their officers or deputies on how to handle individuals suffering from mental illness.

112.

In 2012, the Georgia Legislature created the Georgia Accountability Court Program. Two programs associated with Accountability Courts are the Mental Health Court and Veterans Court.

113.

Defendants Mike Smith and Tim Chatman are aware of these Courts, and the types of cases that are referred to Accountability Courts.

114.

Defendants Mike Smith and Tim Chatman were under a duty to train their officers or deputies on how to diffuse situations with individuals suffering from mental illness and/or veterans suffering from a PTSD episode. However, Defendants provided no such training.

115.

As discussed *supra*, neither Defendant Johnny L. Smith nor Defendant Clark Schrader illustrated any training in how to address Plaintiff's PTSD episode. Neither tasing nor forcibly shoving to the ground is the correct way to diffuse a veteran suffering from a PTSD episode.

116.

Had Defendants Mike Smith and Tim Chatman properly trained their officers or deputies, Plaintiff would have never been subjected to excessive force and an unlawful arrest.

117.

Had Defendants Mike Smith and Tim Chatman properly trained their officers or deputies, Plaintiff would have been properly provided medical care instead of arrested.

118.

As a result of Defendants Smith's and Chatman's failure to train and supervise their subordinates, said Defendants caused Plaintiff to subject violations of the Fourth and Eighth Amendment of the United States Constitution.  Accordingly, Plaintiff is entitled to all damages available to him under Section 1983, including attorney's fees and costs of litigation, in an amount to be proven at trial.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demand trial by jury on all issues so triable.

WHEREFORE. Plaintiff Phillip Messick respectfully prays for the following relief:

1)    The Summons and Process be issued to Defendants and that Defendants be served as provided by law;

2)    That this matter be tried before a jury of twelve;

3)    That judgment be awarded for and in favor in Plaintiff Phillip Messick on Count I for Failure to Provide Medical Care against Defendants Roger Bryant and Clark Schrader, in their Individual Capacities, and grant Plaintiff all relief allowable under 42 U.S.C. § 1983, including an award of reasonable attorney's fees and costs of litigation, in amount to be proven at trial;

4)    That judgment be awarded for and in favor in Plaintiff Phillip Messick on Count II for False Arrest against Defendants Roger Bryant and Clark Schrader, in their Individual

Capacities, and grant Plaintiff all relief allowable under 42 U.S.C. § 1983, including an award of reasonable attorney's fees and costs of litigation, in amount to be proven at trial;

5)    That judgment be awarded for and in favor in Plaintiff Phillip Messick on Count III for Excessive Force against Defendants Johnny L. Smith and Clark Schrader, in their Individual Capacities, and grant Plaintiff all relief allowable under 42 U.S.C. § 1983, including an award of reasonable attorney's fees and costs of litigation, in amount to be proven at trial;

6)    That judgment be awarded for and in favor in Plaintiff Phillip Messick on Count IV for Failure to Train against Defendants Mike Smith and Tim Chatman, in their Individual Capacities, and grant Plaintiff all relief allowable under 42 U.S.C. § 1983, including an award of reasonable attorney's fees and costs of litigation, in amount to be proven at trial;

7)    To the extent that such relief is not otherwise prayed for herein, judgment be awarded for and in favor of Plaintiff Phillip Messick and against all Defendants to recover attorney's fees and costs of litigation pursuant to 42 U.S.C. § 1988(b); and,

8)    For such other and further relief as the Court shall deem just and proper.

Respectfully submitted, this 8th day of March 2022.

/s/ Emily M. Walker
EMILY M. WALKER
Georgia Bar No. 221826
KENNETH E. BARTON III
Georgia Bar No. 301171
*Attorneys for Plaintiff*

COOPER, BARTON & COOPER, LLP
170 College Street
Macon, Georgia 31201
(478) 841-9007 telephone
(478) 841-9002 facsimile
emw@cooperbarton.com
keb@cooperbarton.com